ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| D C VERRENGIA, t/c/c D C STERLIN<br><br>Apelante<br><br>v.<br><br>JUSTIN ANTHONY VERRENGIA<br><br>Apelado | KLAN202401035 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2022CV01504<br><br>Sobre: Incumplimiento de Contrato, Liquidación de Comunidad de Bienes |

Panel integrado por su presidente, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Compareció D C Verrengia t/c/c D C Sterlin (en adelante, "demandante" o "apelante") mediante el recurso de apelación de epígrafe. Nos solicitó la revocación de la Sentencia emitida el 27 de septiembre de 2024, notificada el 1 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "foro de instancia"). En la aludida determinación, el foro de instancia desestimó con perjuicio la totalidad de la *Demanda* e impuso la suma de $6,000.00 en concepto de honorarios de abogado por temeridad. Además, declaró ha lugar la *Reconvención* y ordenó el pago de $5,000.00 por daños morales y angustias mentales, y $10,000.00 por daños económicos.

Por los fundamentos que expondremos a continuación, se **modifica** la *Sentencia* apelada para dejar sin efecto la compensación

---

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución del Juez Roberto Rodríguez Casillas.

de daños económicos, daños morales y angustias mentales, así como los honorarios de abogados por temeridad. Así modificada, se **confirma** el resto de la *Sentencia* apelada.

**-I-**

La demandante presentó *Demanda[2]* sobre incumplimiento de contrato, fraude y liquidación de comunidad de bienes gananciales contra el Sr. Justin Anthony Verrengia (en adelante, "demandado" o "apelado"). Sostuvo que el matrimonio contraído con el demandado quedó disuelto en el año 2019 en sede notarial. Alegó que el inventario de bienes liquidado mediante escritura pública estaba incompleto, ya que el demandado ocultó de manera fraudulenta la cantidad correcta de criptomonedas pertenecientes a la sociedad legal de bienes gananciales, con el fin de beneficiarse económicamente. Por lo que alegó que, al momento del divorcio, solo se realizó una liquidación parcial de los bienes gananciales. Además, solicitó que se le ordenara al demandado a cumplir de inmediato con el pago de las obligaciones pactadas en el acuerdo de divorcio.

El demandado instó su *Contestación a demanda[3]* en la cual negó las alegaciones de la referida causa de acción. En conjunto, instó una *Reconvención* por los daños que alegó haber sufrido a raíz de lo que describió como alegaciones falsas, fraudulentas y frívolas. Sostuvo que la demandante aceptó recibir el pago de $240,000.00 como conversión del valor de las criptomonedas, ya que no le interesaba conservar dichos activos. Alegó, además, que pagó en su totalidad dicha obligación e, incluso, adujo haber realizado pagos adicionales a lo pactado, para un total de $260,000.00. Por lo cual, solicitó la imposición de daños y honorarios de abogados ascendente a $200,000.00, por la alegada temeridad y persecución maliciosa de la demandante.

---

[2] Apéndice del recurso, anejo 2, págs. 7-12.
[3] *Id.*, anejo 3, págs. 13-19.

Posteriormente, las partes presentaron de forma conjunta el *Informe de conferencia con antelación al juicio.*[4] Allí estipularon que durante la vigencia del matrimonio se creó la corporación My Alchemy, LLC. Por un lado, la demandante alegó que la participación de las partes en la referida corporación no fue liquidada ni valorada en el acuerdo del divorcio. En cambio, el demandado sostuvo que trabajaba para la corporación My Alchemy, LLC, como "podcaster" en un canal de *YouTube,* actividad de la cual devengada sus ingresos y que constituyó la principal fuente de ingresos del matrimonio. Además, las partes estipularon los documentos siguientes: (i) Escritura de divorcio número 8, del 12 de diciembre de 2019, otorgada ante la notario Nelly Isabel Pujals González, en Humacao, Puerto Rico; (ii) *Stipulations and Agreements on Divorce By Mutual Consent,* firmado el 10 de octubre de 2019; (iii) Planillas de Contribución Sobre Ingresos del Sr. Justin Verrengia, del 2019 2021; (iv) Planillas de Contribución Sobre Ingresos de la entidad, My Alchemy, LLC, del 2019-2021; (v) *Bitcoin Balance* at December 11, 2019, provisto por el demandado; (vi) *BTC price history report* durante la vigencia del matrimonio; (vii) Estados de cuenta de demandante: Banco Popular 3615; (viii) Estados de cuenta de demandante: FirstBank; (ix) Estados de cuenta de Justin Verrengia: BPPR 3296 y 2171; y (x) Estados de cuenta de My Alchemy: BPPR 3410.

Luego de varios trámites procesales, el foro de instancia celebró el juicio en su fondo durante seis (6) días, en el cual comparecieron ambas partes.[5] Allí el foro de instancia admitió como prueba documental doce (12) documentos estipulados, cinco (5) documentos presentados por la demandante y tres (3) documentos presentados por el demandado. Además, el foro de instancia tuvo

---

[4] *Id.,* anejo 11, págs. 36-53.
[5] *Id.,* anejos 18 al 24, págs. 165-185.

ante sí consideración los testimonios de ambas partes. Una vez la demandante culminó con la presentación de su prueba, el demandado solicitó en corte abierta la desestimación de la *Demanda* por *non-suit* al amparo de la Regla 39.2(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(c).

Así las cosas, el foro de instancia emitió *Sentencia*[6] escrita mediante la cual desestimó con perjuicio la totalidad de la *Demanda* bajo el fundamento de insuficiencia de prueba y falta de credibilidad a la demandante; e impuso la suma de $6,000.00 en concepto de honorarios de abogado por temeridad. De otro lado, declaró ha lugar la *Reconvención* y ordenó el pago de $5,000.00 por daños morales y angustias mentales, y $10,000.00 por daños económicos. Además, hizo las determinaciones de hechos siguientes:

1. Las partes contrajeron nupcias, el día 20 de octubre de 2011, en el Estado de Florida.
[…]
3. Las partes en su matrimonio fueron emprendedores de distintos negocios. Trabajaban juntos en todo momento. Eran como un equipo y socios para todas las ideas de negocios que elaboraban y desarrollaban.
[…]
5. En el 2014 procrearon a su única hija producto de la relación matrimonial.
[…]
8. La fuente de ingresos principal durante el matrimonio desde su mudanza a Puerto Rico en el 2018 era lo que producía Justin como "podcaster" a través de la entidad en su canal de YouTube: "Crypto News Alerts."
[…]
11. La demandante tenía experiencia negociando los contratos con los clientes. Negociaba los contratos con los hoteles para los eventos que las partes desarrollaban en sus distintos negocios de mercadeo y publicidad de productos.

12. La parte demandante tenía conocimiento de todas sus cuentas bancarias, criptomonedas y demás bienes pertenecientes a la sociedad legal de gananciales al momento del divorcio el 12 de diciembre de 2019.
[…]
20. El demandado almacenaba las criptomonedas en hard wallets marca Trezor y en un digital wallet, Coinbase.

21. La demandante conocía de los hard wallets y digital wallets habidos durante el matrimonio.

22. La demandante pudo inspeccionar posterior al divorcio todos los "hard wallets" y "digital wallet" de Justin que contenían todas sus criptomonedas.

---

[6] *Id.*, anejo 28, págs. 193-225.

[...]

24. El acuerdo de divorcio intitulado "Stipulations and Agreements on Divorce By Mutual Consent", fue firmado por ambas partes bajo juramento el 10 de octubre de 2019 ante la notario Nelly Isabel Pujals González.

25. Todos los folios de la Escritura de Divorcio fueron iniciados por la demandante. Todas las hojas del Acuerdo juramentado fueron iniciadas por la demandante.

[...]

28. La demandante no anunció como testigo a la abogada notario que celebró la escritura de divorcio para intentar demostrar irregularidades, si alguna, en el proceso de consumar el divorcio a través de escritura pública.

29. La demandante no anunció como testigo al Lcdo. Vilaró para intentar demostrar irregularidades, si alguna, en el proceso de asesoramiento a las partes para efectuar el divorcio por consentimiento mutuo a través de escritura pública.

30. La demandante no presentó testimonio pericial para intentar demostrar el alegado fraude sobre ocultación de bienes cometido por Justin.

[...]

32. El matrimonio entre las partes quedó disuelto a través de Escritura otorgada el 12 de diciembre de 2019, ante la notaria pública Nelly Isabel Pujals González.

[...]

34. No fue creíble el testimonio de la demandante a los efectos de falta de conocimiento o ignorancia sobre el tema de las criptomonedas, los negocios de las partes, las negociaciones con el abogado y notario para el acuerdo del divorcio.

35. Según surgió del testimonio creíble de la parte demandada pero omitido por la parte demandante, estos comenzaron desde jóvenes a desarrollarse tanto en el aspecto personal como profesional apoyándose mutuamente, viajando y viviendo en diferentes partes del mundo siendo su relación un núcleo donde cada uno conocía lo que tenía el otro.

36. La demandante, a quien el tribunal no le mereció credibilidad por su conducta, demeanor y omisiones en su testimonio, decidió presentarse como una víctima ignorante cuando la prueba presentada y creída por este tribunal fue a los efectos que ella se ha desarrollado y ha tenido éxito como profesional en las redes.

37. Determinamos, a base de la prueba recibida y creída, que las partes acordaron liquidar la totalidad de sus bienes gananciales a través del divorcio por consentimiento mutuo y así evitar los pesares que conllevaría un litigio.

[...]

40. De la prueba admitida y creída la demandante aceptó que recibiera 240k a cambio de que Justin se quedara con las criptomonedas y el auto.

41. Al momento del divorcio la sociedad legal de gananciales tenía criptomonedas entre las cuales se encontraban Bitcoins y Altcoins.

[...]

43. La parte demandada, Justin, a quien este Tribunal le otorgó total credibilidad por su conducta, demeanor y

claridad en su testimonio, confirmó que efectuó todos los pagos ascendentes a 240k para satisfacer el Acuerdo de la Escritura de Divorcio.

[…]

45. La parte demandada, Justin, a quien este Tribunal le otorgó total credibilidad por su conducta, demeanor y claridad en su testimonio, compensó en dinero mucho más de la mitad del valor de las criptomonedas que tenía a su haber al momento de su divorcio el 12 de diciembre de 2019.

[…]

49. Al momento del divorcio, el 12 de diciembre de 2019, el valor de cada Bitcoin (BTC) en dólares era: $7,243.13.

[…]

54. A pesar de que del Acuerdo suscrito el 10 de octubre de 2019, surgía un total de 8.92 Bitcoins, según la prueba admitida y creída, la demandante sabía en todo momento la cantidad real de criptomonedas, incluyendo la cantidad total de Bitcoins que poseía la sociedad legal de gananciales y que estaría renunciando a cambio de recibir los 240k.

[…]

56. Según la prueba admitida y creída, las partes liquidaron totalmente sus bienes y deudas gananciales a través del Acuerdo que formó parte de la Escritura de Divorcio por Consentimiento mutuo.

57. De la prueba admitida y creída, se desprende que las estipulaciones contenidas en la petición de divorcio por consentimiento mutuo constituyeron un contrato de transacción obligatoria para las partes.

[…]

69. De la prueba admitida se desprende que la demandante tuvo la oportunidad de consultar el Acuerdo con personas de su entera confianza y su respectivo representante legal, antes de firmar y que arribó libre y voluntariamente a los acuerdos contenidos en el Acuerdo sobre la división y liquidación de los bienes gananciales.

[…]

83. No fue creíble el testimonio de la demandante a los efectos que no recibió asesoramiento adecuado o que las estipulaciones no fueran preparadas de acuerdo a sus manifestaciones, deseos de forma libre y voluntaria.

[…]

91. Según la prueba admitida y creída, Justin, en ocasiones, liquidaba criptomonedas, las depositaba en la cuenta personal para poder seguir realizando los pagos de su obligación contractual.

92. Según la prueba admitida y creída como resultado de la demanda incoada por la demandante, Justin, ha sufrido daños emocionales y económicos para defenderse de las imputaciones en su contra.

93. Según la prueba admitida y creída, Justin, dio en colateral bitcoins a la entidad Blockfi, liquidó criptomonedas y cogió préstamos para poder costear la defensa de la demanda incoada por la demandante.

94. Según la prueba admitida y creída, Justin, desarrolló ansiedad, insomnio a raíz de la demanda incoada.

95. Según la prueba of[r]ecida, Justin, para la defensa de la demanda de epígrafe, invirtió aproximadamente $35,000

en el 2022; $30,000.00 en el 2023 y $15,000.00 en el 2024 para un total aproximado de $80,000.00.

96. Según la prueba admitida y creída, la inversión tuvo un efecto negativo sobre su capacidad para poder pagar la pensión alimentaria en favor de su hija.[7]

En desacuerdo, la demandante presentó una *Solicitud de Reconsideración*[8] en la cual argumentó que el foro de instancia incidió al desestimar la *Demanda* sin que el demandado presentara su prueba y conceder la *Reconvención,* aun cuando esta no formó parte del *Informe de conferencia con antelación al juicio.* Adujo que el foro de instancia debió interpretar los acuerdos transaccionales de divorcio de manera restrictiva y que no acoger una interpretación ajena al acuerdo escrito. Es decir, argumentó que el tribunal no debió concluir que las partes acordaron liquidar criptomonedas adicionales que no fueron incluidas expresamente en el acuerdo, por tratarse de activos adquiridos luego de firmado dicho acuerdo. Igualmente sostuvo que el tribunal no podía entender como liquidada la participación de las partes en la corporación, ya que dicha participación no fue mencionada en el acuerdo.

Ante esto, el foro de instancia denegó la solicitud de reconsideración.[9]

Aun inconforme, el demandante acudió ante nos mediante el recurso de epígrafe y esbozó los señalamientos de errores siguientes:

PRIMER ERROR:
ERRÓ EL TPI AL DESESTIMAR LA DEMANDA A TRAVÉS DE UNA MOCION "NON-SUIT" PRESENTADA EN SALA POR EL APELADO A PESAR DE QUE SI SE PRESENTÓ PRUEBA SUFICIENTE PARA DEMOSTRAR QUE EL RECLAMO DE LA DEMANDANTE PROCEDE, DETERMINACIÓN DEL TPI QUE IMPIDIÓ QUE SE PRESENTARA PRUEBA IMPORTANTE SOBRE EL ACUERDO DE DIVORCIO DE LAS PARTES[.]

SEGUNDO ERROR:
ERRÓ EL TPI AL DECLARAR HA LUGAR LA MOCIÓN NON-SUIT Y DESESTIMAR LA DEMANDA NEGANDO A LA APELANTE LA OPORTUNIDAD DE CONTRAINTERROGAR A LOS TESTIGOS DE APELADO[.]

TERCER ERROR:

---

[7] *Id.*, págs. 196-205.
[8] *Id.,* anejo 30, págs. 231-261.
[9] *Id.*, anejo 31, pág. 262.

ERRÓ EL TPI AL DECLARAR HA LUGAR LA MOCIÓN NON-SUIT Y DESESTIMAR LA DEMANDA SIN ESCUCHAR EL TESTIMONIO DEL ABOGADO QUE PREPARÓ EL DIVORCIO, ASÍ COMO LA NOTARIA QUE OTORGÓ LA ESCRITURA DE DIVORCIO, A PESAR DE QUE TODA LA CONTROVERSIA DEL CASO ESTABA ATADA AL REFERIDO ACUERDO DE DIVORCIO[.]

CUARTO ERROR:
ERRÓ EL TPI AL DETERMINAR QUE EL ACUERDO DE DIVORCIO ENTRE LAS PARTES ERA VALIDO A PESAR DE QUE NO CUMPLIÓ CON EL REQUISITO LEGAL EN CASOS DONDE HAY MENORES Y BIENES EL CUAL REQUIERE QUE CADA PARTE FUERA REPRESENTADO LEGALMENTE POR SUS RESPECTIVOS ABOGADOS, A PESAR DE HABERSE DEMOSTRADO QUE UN SOLO ABOGADO FUE QUIEN LOS ATENDIÓ[.]

QUINTO ERROR
ERRÓ EL TPI AL INTERPRETAR EL ACUERDO TRANSACCIONAL DE LA[S] PARTES DE FORMA LIBERAL AL CONSIDERAR ACUERDOS QUE NO SURGEN EXPRESAMENTE DEL ACUERDO DE LIQUIDACIÓN DE BIENES GANANCIALES, CONTRAVINIENDO LA DOCTRINA DE INTERPRETACIÓN RESTRICTIVA DE LOS CONTRATOS TRANSACCIONALES DE DIVORCIO[.]

SEXTO ERROR
ERRÓ EL TPI AL INTERPRETAR QUE DENTRO DEL ACUERDO ECONÓMICO DEL DIVORCIO SE LIQUIDARON BIENES QUE NO SURGEN DEL ACUERDO ESCRITO.

SÉPTIMO ERROR
ERRÓ EL TPI AL INTERPRETAR QUE DENTRO DEL ACUERDO ECONÓMICO DEL DIVORCIO SE LIQUIDARON BIENES RECIBIDOS POSTERIOR A LA FIRMA DEL ACUERDO DE DIVORCIO.

OCTAVO ERROR
ERRÓ EL TPI EN OTORGAR TOTAL CREDIBILIDAD AL TESTIMONIO DE APELADO A PESAR DE HABERSE PRESENTADO PRUEBA DOCUMENTAL QUE CONTRADICE DIRECTAMENTE EL TESTIMONIO DE ESTE, LO QUE DENOTA PARCIALIDAD DE LA JUZGADORA[.]

NOVENO ERROR:
ERRÓ EL TPI AL DETERMINAR QUE LA ENTIDAD JURÍDICA CREADA EN MATRIMONIO (MY ALCHEMY) Y LA SOCIEDAD GANANCIAL ERAN INSEPARABLES EN CUANTO A LOS BIENES QUE LA COMPONÍAN, POR LO QUE DIVIDIR Y LIQUIDAR LA SOCIEDAD GANANCIAL SE LIQUIDÓ POR IGUAL LA ENTIDAD[.]

DÉCIMO ERROR:
ERRÓ EL TPI AL ADJUDICARLE CARÁCTER DE FINAL Y FIRME AL ACUERDO ECONÓMICO DEL DIVORCIO[.]

UNDÉCIMO:
ERRÓ EL TPI AL DECLARAR CON LUGAR LA RECONVENCIÓN PRESENTADA POR EL APELADO AUN CUANDO NI LA PRUEBA PRESENTADA, NI LOS ARGUMENTOS FORMARON PARTE DEL INFORME DE CONFERENCIA CON ANTELACIÓN AL JUICIO[.]

DUODÉCIMO

ERRÓ EL TPI AL CONCEDER UNA RECONVENCIÓN BASADA EN LOS DAÑOS CAUSADOS POR LA PRESENTACIÓN DE UN PLEITO DENTRO DEL MISMO PLEITO QUE SE ALEGA OCASIONÓ EL DAÑO[.]

DECIMOTERCERO
ERRÓ EL TPI AL INCURRIR EN CLARA PARCIALIDAD A FAVOR DEL APELADO Y EN CONTRA DE LA APELANTE, INCURRIENDO EN UN CLARO PREJUICIO EN CONTRA DE ELLA.

Tras la estipulación de la Transcripción de Prueba Oral (en adelante, "TPO"), los apelados presentaron su *Alegato en Oposición a Apelación.*

Así pues, perfeccionado el recurso, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Divorcio en sede notarial**

En Puerto Rico, el matrimonio "es una institución civil que procede de un contrato civil en virtud del cual un hombre y una mujer se obligan mutuamente a ser esposo y esposa, y cumplir el uno para con el otro los deberes que la ley les impone". Artículo 68 del derogado Código Civil de Puerto Rico 1930, 31 LPRA sec. 221. Dicho vínculo matrimonial puede disolverse "por el divorcio legalmente obtenido", entre otros. Artículo 95 del derogado Código Civil de Puerto Rico 1930, 31 LPRA sec. 301.

A tono con ello, se disponían una serie de causales por medio de las cuales se podía efectuar la ruptura del vínculo matrimonial, en lo aquí pertinente, la siguiente: "[l]a consignación del mutuo consentimiento entre los cónyuges para la disolución del matrimonio, presentada conjuntamente mediante petición ex parte ante el Tribunal de Primera Instancia; o mediante la consignación del acuerdo de consentimiento mutuo en escritura pública". Artículo 96 del derogado Código Civil de Puerto Rico 1930, 31 LPRA sec. 321.

En relación con el procedimiento del divorcio en sede notarial, el derogado Código Civil disponía como sigue:

Cuando la acción de divorcio se funde en "mutuo consentimiento", y este vaya a concederse a través de la formalización de una escritura pública a ser otorgada ante un Notario, este profesional deberá consignar en dicho documento, que la decisión de solicitar conjuntamente la disolución del vínculo matrimonial es voluntaria y que los peticionarios han llegado a esta, mediando la reflexión, y que a su vez, es libre de toda coacción, estando impedido el Notario de otorgar el divorcio, si a su entender los acuerdos incumplen con las formalidades que debe contener la escritura, de conformidad con la Ley Núm. 75 de 2 de julio de 1987, según enmendada, conocida como "Ley Notarial de Puerto Rico", o con cualesquiera otras disposiciones reglamentarias que sean promulgadas por el Tribunal Supremo, al amparo de la antes mencionada ley o cualquier otra aplicable.

En el caso que los cónyuges que acuerden solicitar la disolución de su vínculo matrimonial ante Notario tengan bienes para liquidar, deberán previo a otorgar la escritura de divorcio, alcanzar un acuerdo para la liquidación de dichos bienes gananciales y/ o comunidad de bienes. Dicho acuerdo deberá ser juramentado y deberá consignar que ambas partes fueron debidamente asesoradas por sus respectivos abogados y que es libre de coacción. El Notario consignará en la escritura de divorcio que dicho acuerdo fue alcanzado previamente, que fue libre de coacción y que ambas partes fueron asesoradas por sus respectivos abogados. `

[...] Cualquier documento y/o escrito que incluya y exprese la voluntad de las partes comparecientes sobre la disposición de los bienes gananciales y/o los acuerdos relacionados a los menores será denominado como: "Estipulación y Acuerdos sobre Divorcio por Consentimiento Mutuo". Dicho documento formará parte de la escritura de divorcio [...] En caso de que el divorcio por consentimiento mutuo se efectúe mediante escritura pública, la misma advendrá final y firme con la firma de los comparecientes.

Artículo 97 del derogado Código Civil de Puerto Rico 1930, 31 LPRA sec. 331.

El propósito de acompañar la petición de divorcio con unas estipulaciones, que, entre otras cosas, establezcan acuerdos en cuanto a la división de bienes, se circunscribe en evitar que posterior al divorcio las partes tengan que nuevamente enfrentarse a la liquidación del régimen económico, lo cual puede incentivar hostilidades y desavenencias entre las partes. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 721 (2022). Una vez aceptadas las referidas estipulaciones tendrán efecto de cosa juzgada. *Negrón Vélez v. ACT,* 196 DPR 489, 507 (2016). Además, es norma reiterada que —las estipulaciones contenidas en una petición de divorcio por consentimiento mutuo— constituyen *un contrato de*

*transacción* que obliga a las partes. *Díaz Rodríguez v. García Neris,* supra, pág. 720; *Betancourt González v. Pastrana Santiago,* 200 DPR 169, 184 (2018).

Ahora bien, en nuestro ordenamiento, el contrato de transacción es aquel en el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado. Artículo 1709 del derogado Código Civil de Puerto Rico de 1930, 31 LPRA sec. 4821; *Betancourt González v. Pastrana Santiago,* supra. De este modo, los elementos de un contrato de transacción son los siguientes: (1) una relación jurídica incierta y litigiosa; (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable; y (3) las recíprocas concesiones de las partes. *Feliciano Aguayo v. Mapfre,* 207 DPR 138, 156 (2021); *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706, 729-730 (2018).

En lo relacionado a la interpretación de este tipo de contratos, se ha afirmado que esta es de naturaleza restrictiva. *Berkan et al. v. Mead Johnson Nutrition,* 204 DPR 183, 207 (2020). Asimismo, se ha establecido que para su interpretación aplican las reglas generales que regulan los contratos en todo lo que no sea incompatible con la normativa dispuesta para los contratos de transacción. *Díaz Rodríguez v. García Neris,* supra, pág. 721. Ante ello, cuando los términos de un contrato sean claros, y no dejen duda sobre la intención de los contratantes, se estará al sentido literal de las cláusulas. Artículo 1233 del derogado Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3471; *Díaz Rodríguez v. García Neris,* supra.

**B. Apreciación de la Prueba**

Sabido es que los foros apelativos tenemos la facultad de revisar en su totalidad las conclusiones de derecho que emita el Tribunal de Primera Instancia. *Dávila Nieves v. Meléndez Marín,* 187

DPR 750, 770 (2013). Sin embargo, en cuanto a las determinaciones de hechos, la Regla 42.2 de Procedimiento Civil dispone lo siguiente:

> Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.

32 LPRA Ap. V, R. 42.2.

Lo anterior, basado en que, el foro primario merece gran deferencia, ya que es quien está en mejor posición de evaluar y adjudicar la credibilidad de un testigo. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 810 (2009); *Argüello v. Argüello*, 155 DPR 62, 79 (2001). Esto es, es el Tribunal de Primera Instancia quien tiene la oportunidad de apreciar los gestos, titubeos, contradicciones, manierismos, dudas, vacilaciones, entre otros elementos subjetivos, de los testigos que declaran en el pleito. *Argüello v. Argüello*, supra, págs. 78, citando a *Figueroa v. Am. Railroad Co.*, 64 DPR 335, 336 (1994).

Por ello, nuestro Tribunal Supremo ha sido enfático en que los tribunales apelativos —como regla general— debemos evitar intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el foro primario, salvo que se demuestre que este incurrió en error manifiesto, pasión, prejuicio o parcialidad. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); *Dávila Nieves v. Meléndez Marín*, supra, pág. 771; *Ramírez Ferrer v. Conagra Foods PR*, supra, pág. 811; *Argüello v. Argüello*, supra págs. 78-79. Por tanto, nuestra intervención con la prueba testifical solo procederá cuando, al llevar a cabo un análisis integral de esta, "nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918. Por consiguiente, nuestra facultad de sustituir las determinaciones hechas por el Tribunal de Primera Instancia se

limita a aquellas circunstancias en las que no exista base suficiente para apoyar las mismas a la luz de la prueba admitida. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 794 (2020).

De este modo, una parte que impugne las determinaciones de hechos emitidas por el foro primario debe identificar el error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad. *SLG Rivera Carrasquillo v. AAA,* 177 DPR 345, 356 (2009). Dicha parte deberá "sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia". *Dávila Nieves v. Meléndez Marín,* supra, pág. 775. De esta forma, el foro apelativo podrá evaluar si el juzgador de los hechos cumplió con su rol de adjudicar la controversia conforme a derecho y de manera imparcial. *Id.*, pág. 777.

Particularmente, cuando se trate de prueba pericial, ningún tribunal está obligado a coincidir con las conclusiones de un perito, independientemente de que esta sea técnicamente correcta. *Sucn. Rosado v. Acevedo Marrero,* supra, pág. 918. Por tanto, todo tribunal tiene discreción de adoptar su propio criterio en la apreciación de dicha prueba. *Id.,* citando a *Zambrana v. Hospital Santo Asilo de Damas,* 109 DPR 517, 522 (1980) y a *Prieto v. Maryland Casualty* Co., 98 DPR 594, 623 (1965). Asimismo, los foros apelativos se encontrarán en la igual posición que el foro de instancia para evaluar la prueba pericial. *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918; *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011).

**C. Desestimación por insuficiencia de la prueba (*nonsuit*)**

La Regla 39.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2, contempla diversas modalidades de desestimación. En lo pertinente, el inciso (c) dispone lo siguiente:

(c) Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal lo disponga de otro modo en su orden de desestimación, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.

Este inciso regula la figura de la desestimación por insuficiencia de la prueba (*nonsuit*). *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 266 (2021). Esta figura permite al tribunal, "luego de que la parte demandante presente la prueba, **a aquilatarla y a formular su apreciación de los hechos, según la credibilidad que le merezca la evidencia**". *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011) (énfasis suplido).

En ese contexto, corresponde al foro primario determinar si la prueba presentada por el demandante es suficiente, por sí sola, para satisfacer los elementos de su causa de acción. De concluir que no lo es, el tribunal puede, en el ejercicio de su sana discreción, desestimar la reclamación.

No obstante, nuestro Tribunal Supremo ha sido enfático en que dicha facultad debe ejercerse mediante un escrutinio sereno y cuidadoso, y que cualquier duda razonable debe resolverse a favor de permitir que la parte demandada presente su prueba. Ello obedece a que una desestimación al amparo de la Regla 39.2(c), conlleva la terminación de la reclamación del demandante y, por ende, de su oportunidad de obtener un remedio judicial. *Id.*; véase, además, *Lebrón v. Díaz*, 166 DPR 89, 93-94 (2005). 2553

**D. Persecución maliciosa**

La doctrina de persecución maliciosa comprende "la presentación maliciosa y sin causa de acción probable, de un

proceso criminal o civil contra una persona, que produce daños a ésta". *Toro Rivera et als. v. ELA et al.*, 194 DPR 393, 408 (2015) citando a *García v. ELA,* 163 DPR 800, 810 (2005). Al ser la malicia un elemento esencial de esta causa de acción, se le califica como una acción en daños y perjuicios causada por conducta torticera intencional al amparo del Artículo 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801.

Dicha causa de acción por daños procura ofrecer un remedio a la parte adversamente afectada, al ser sometida de forma injusta a un proceso civil o penal, y que, como consecuencia de ello, sufrió algún menoscabo hacia su persona, a sus bienes o a su reputación. *Parés v. Ruiz*, 19 DPR 342 (1913). Es decir, el interés protegido por esta acción es controlar la presentación de litigios frívolos e injustificados.

En nuestro ordenamiento, como regla general, no se reconoce la procedencia de una acción en daños y perjuicios como consecuencia de un pleito civil. *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1074 (2020); *García v. ELA,* supra, pág. 810; *Giménez Álvarez v. Silén Maldonado*, 131 DPR 91, 96 (1992). De ordinario, el remedio disponible para la parte que es demandada de forma injustificada es la imposición de costas y honorarios de abogados. *Conde Cruz v. Resto Rodríguez et al.*, supra, págs. 1074-1075; *Giménez Álvarez v. Silén Maldonado*, supra, págs. 96-97; *Pereira v. Hernández*, 83 DPR 160, 164-165 (1961) [La sanción judicial por el uso indebido de los procedimientos legales se traduce en la condena en costas y honorarios de abogado dentro del mismo pleito"]. A manera de excepción, se puede presentar una causa de acción en daños y perjuicios por persecución maliciosa cuando los hechos probados del caso revelan **circunstancias extremas** en las que se haya acosado al demandante con pleitos injustificados e instituidos **maliciosamente.** *Id.*

Así pues, la procedencia de esta acción está supeditada a la concurrencia de cuatro requisitos; a saber: (1) que el demandado inició una acción civil o proceso criminal; (2) de forma maliciosa y sin que existiera causa probable; (3) que el proceso concluyó de manera favorable para el demandante, y, (4) que, a causa de ello, este sufrió daños y perjuicios. *García v. ELA,* supra; *Giménez Álvarez v. Silén Maldonado,* supra; *Fonseca v. Oyola,* 77 DPR 525, 528 (1954).

También, es importante destacar que, en los casos de persecución maliciosa, la malicia no se presume. *Toro Rivera et als. v. ELA et al.*, supra, pág. 409. Por el contrario, se establece con bases fácticas y no con alegaciones vagas o meras conclusiones de derecho. *Id.* Le corresponde a la parte demandante demostrar "que el demandado actuó maliciosamente y sin que existiera causa probable." *Raldiris v. Levitt and Sons of PR, Inc.*, 103 DPR 778, 782 (1975). Es este quien carga con el peso de la prueba.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En el caso que nos ocupa, la apelante esbozó trece (13) señalamientos de error. Con el fin de agilizar y precisar nuestro análisis, agruparemos dichos señalamientos conforme a los temas que abordan.

**A. *Cuarto, quinto, sexto, séptimo, octavo, noveno, décimo y decimotercero señalamiento de error***

En síntesis, la apelante alegó que el foro de instancia erró al interpretar de formar liberal el acuerdo de divorcio al concluir: (i) que ambas partes estuvieron representadas por sus respectivos abogados; (ii) que se liquidaron bienes que no constan en el acuerdo escrito; (iii) que se liquidaron bienes adquiridos con posterioridad a

la firma del acuerdo; (iv) que la liquidación de la sociedad legal de gananciales implicó, a su vez, la liquidación de la corporación; y (v) que el acuerdo era final y firme. Además, argumentó que el foro de instancia incurrió en parcialidad al otorgar total credibilidad al testimonio del apelado.

De entrada, resulta pertinente enfatizar que el vínculo matrimonial entre la apelante y el apelado fue disuelto en sede notarial mediante la otorgación de una escritura pública por la causal de consentimiento mutuo. Tras examinar dicha escritura, coincidimos con el foro de instancia en que esta cumple con los requisitos legales para su validez. Ello es así porque: (i) fue otorgada ante notario; (ii) dejó constancia de que la solicitud de disolución matrimonial fue voluntaria, libre de coacción y producto de la reflexión; (iii) incorporó un acuerdo juramentado sobre la liquidación de bienes gananciales; y (iv) consignó que ambas partes fueron asesoradas por sus respectivos abogados sobre las responsabilidades y consecuencias tanto del acuerdo de liquidación como del divorcio. Véase, apéndice del recurso, anejo 1, págs. 1-6. Por tanto, concluimos que dicha escritura adquirió carácter final y firme con la firma de los comparecientes. Véase, Artículo 97 del derogado Código Civil de Puerto Rico 1930, *supra.* Además, adviértase que ninguna de las partes ha planteado su nulidad o cuestionado su eficacia. Por el contrario, la apelante limita su planteamiento a impugnar la interpretación que el foro de instancia hizo del contenido de dicha escritura.

En cuanto a las estipulaciones y acuerdos sobre la liquidación de bienes contenidas en una escritura pública de divorcio, explicamos en el derecho aplicable que dichos acuerdos tienen efecto de cosa juzgada y constituyen un contrato de transacción entre las partes. Ello obedece a que las partes, mediante

estipulaciones, buscan evitar un litigio posterior o la reapertura del proceso de liquidación.

Nótese que, en el caso ante nuestra consideración, no cabe duda de que el acuerdo de divorcio suscrito por la apelante y el apelado constituye un contrato de transacción, toda vez que existía una incertidumbre respecto a la titularidad de los bienes gananciales y ambas partes asumieron obligaciones y realizaron concesiones recíprocas para resolver dicha controversia. Particularmente, en el acuerdo de divorcio titulado *Stipulations and Agreements on Divorce by Mutual Consent*, las partes acordaron liquidar los bienes gananciales como sigue:

a. **JUSTIN VERRENGIA will keep:**
   I. 2010 Mercedes Benz
   II. 8.92 Bitcoins
   III. $45,000.00 in a personal savings and checking account (Justin Verrengia)
   IV. $45,000.00 in personal credit card debt (Justin Verrengia)

b. **D C VERENGIA will keep:**
   I. $12,000.00 in a personal savings and checking account
   II. $5,000.00 in personal credit card debt

27. The parties have also agreed that in exchange for Justin Verrengia keeping the automobile and the crypto assets, he will pay D C Verrengia the amount of $240,000.00, which will be disbursed in twelve (12) payments of $20,000.00 [...]

28. D C Verrengia will provide Justin Verrengia a fifteen (15) day late payment window in case it is necessary to liquidate any of the crypto assets in order to make the monthly payments established in this agreement.

Véase, apéndice del recurso, anejo 13, págs. 61-62.

Resalta a la vista que las partes tuvieron la clara intención de liquidar la totalidad de los bienes gananciales que adquirieron durante el matrimonio mediante dicho acuerdo, y así lo consignaron expresamente. *Id.*, pág. 58 [They acquired common property and debts all of which are listed and valued in this agreement between the parties and are being divided and liquidated as stated in this agreement]. Esto es, surge de manera inequívoca que, las partes

identificaron, valoraron y distribuyeron los bienes y deudas comunes, procediendo así a su división y liquidación en el precitado acuerdo. Por lo cual, concordamos con el foro de instancia en que liquidó todo el caudal ganancial, incluyendo los frutos económicos generados por la corporación. Ello, en la medida que las determinaciones de hechos núm. 6, 8 y 46 de la *Sentencia* apelada establecen que todos los bienes e ingresos gananciales provenían de la corporación y, como explicamos previamente, las partes manifestaron su intención de liquidar todos sus bienes gananciales mediante el acuerdo. Véase, apéndice de recurso, anejo 28, págs. 196 y 200. Además, tras examinar el expediente y la TPO, la parte apelante no nos persuadido de que el foro de Instancia haya actuado bajo pasión, prejuicio o parcialidad o algún error manifiesto al realizar las referidas determinaciones de hechos.

De otra parte, obsérvese que las partes se adjudicaron individualmente bienes específicos. En particular, conforme a las concesiones reciprocas acordadas, al apelado le correspondía un vehículo de motor marca Mercedes Benz del año 2010, así como 8.92 Bitcoins, entre otros activos. No obstante, del acuerdo se desprende que, para que dichas disposiciones tuvieran eficacia, el apelado venía obligado a satisfacer a favor de la apelante un pago de $240,000.00 dólares. Adviértase, además, que en el inciso 27 y 28 del referido acuerdo las partes hacen referencia al término "crypto assets" y no específicamente a los 8.92 Bitcoins, como habían hecho previamente en el mismo documento. Por ende, entendemos que de ello se colige el reconocimiento de ambas partes de la existencia de otros activos digitales pertenecientes a la sociedad legal de gananciales. Dicha interpretación contractual que plasmamos en la presente *Sentencia* coincide con las determinaciones del foro de instancia. Nos explicamos.

El foro de instancia otorgó total credibilidad al testimonio del apelado y, por el contrario, no consideró creíble el testimonio de la apelante respecto a su alegada falta de conocimiento o ignorancia sobre el tema de criptomonedas, los negocios de las partes, las negociaciones con el abogado y notario para la tramitación del acuerdo de divorcio. A esos efectos, el foro de instancia consignó varias determinaciones de hechos relacionadas a la apelante, las cuales resume en su sentencia de la manera siguiente:

> [...] que trabajaba de la mano del [apelado] y eran un equipo de trabajo desarrollando negocios y eventos juntos; que conocía de las finanzas y de todos los activos y deudas que formaban el matrimonio; que el único tema de interés de la [apelante] sobre la división de bienes gananciales fue su deseo de recibir 240k a cambio de que Justin se quedara con todos los valores de criptomonedas; que a pesar de que el acuerdo estableció un número de bitcoins la demandante tuvo conocimiento antes de firmar la escritura de divorcio el 12 de diciembre de 2019 del total verdadero de criptomonedas en el haber ganancial y que, a sabiendas, firmó la escritura; que la [apelante] recibió los 240k en cumplimiento con el Acuerdo en o para junio de 2021, y que aun así, el [apelado] continuó compensándola aun habiendo cumplido su obligación a base del Acuerdo; que la [apelante] firmó la escritura y el Acuerdo voluntariamente, sin coacción alguna por estar conforme a sus dichos [...]

Véase, apéndice del recurso, anejo 28, pág. 222.

No solo la interpretación del acuerdo de divorcio nos lleva a concluir la voluntad de las partes respecto a la división y liquidación de los "crypto assets", sino también la deferencia que merece el foro de instancia, por ser quien estuvo en la mejor posición para evaluar y adjudicar la credibilidad de los testigos. En ese sentido, es norma reiterada que la apreciación de la prueba corresponde al foro de instancia. Es decir, es al foro de instancia a quien le atañe examinar el valor probatorio de los testimonios ofrecidos en corte. Por lo cual, los tribunales apelativos sólo intervendremos con dicha función judicial cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto.

Sin embargo, tras examinar con detenimiento el expediente, no hemos hallado indicador alguno que nos obligue a no concederle gran deferencia a las adjudicaciones de credibilidad que efectuó el

juzgador de instancia. Tampoco se nos ha demostrado que, en este caso, el foro de instancia se alejó de la realidad fáctica, o que su apreciación de la prueba fue producto de pasión, prejuicio, parcialidad o que cometió error manifiesto.

En fin, concluimos que —a la luz de los términos claros consignados en el acuerdo, la interpretación literal de sus cláusulas y la credibilidad que el foro de instancia otorgó a los testimonios presentados en juicio— no encontramos fundamento jurídico que justifique nuestra intervención con lo resuelto por dicho foro. En consecuencia, los señalamientos de error del cuarto al décimo, así como el decimotercero, no fueron cometidos.

### B. *Primer, segundo y tercer señalamiento de error*

La apelante sostuvo que el foro de instancia erró al desestimar la *Demanda* de epígrafe por insuficiencia de la prueba y que, al proceder de tal forma, la privó de la oportunidad de contrainterrogar los testigos anunciados por el apelado. No le asiste la razón.

Conviene recordar que la *Demanda* de epígrafe fue incoada luego de que las partes disolvieran su vínculo matrimonial en sede notarial mediante escritura pública. La apelante al interponer la causa de acción alegó que el apelado escondió bienes gananciales fraudulentamente durante la tramitación del divorcio con el propósito de beneficiarse económicamente. Es decir, sostuvo que el inventario de bienes que liquidaron en el *Stipulations and Agreements on Divorce by Mutual Consent* estaba incompleto, ya que la cantidad de criptomonedas al momento del divorcio era mayor al estipulado.

Tal y como surge del *Informe de conferencia con antelación al juicio* y la TPO*,* la apelante solo ofreció en evidencia su propio testimonio y el testimonio del apelado, así como la prueba documental estipulada y la admitida durante el juicio. No obstante, según discutimos previamente, el foro de instancia no otorgó

credibilidad al testimonio de la apelante sobre su alegada falta de conocimiento o ignorancia sobre el tema de criptomonedas, los negocios de las partes, las negociaciones con el abogado y notario para la tramitación del acuerdo de divorcio. En cambio, le otorgó total credibilidad al testimonio del apelado. Además, nótese que, si bien el apelado anunció en el referido informe que se proponía a presentar los testimonios del Lcdo. Luis J. Vilaró Vélez y la Notaria Nelly Isabel Pujals, era la apelante quien tenía la obligación de probar su caso. Siendo ello así, de haber considerado la apelante que los testimonios del Lcdo. Luis J. Vilaró Vélez y de la Notaria Nelly Isabel Pujals eran indispensables para probar sus alegaciones, tenía el deber de anunciarlos en el *Informe de conferencia con antelación al juicio* y presentar sus testimonios en el juicio para la debida consideración del foro de instancia. No obstante, la apelante no lo hizo. En base a ello, el foro de instancia estableció las determinaciones siguientes:

> 28. La demandante no anunció como testigo a la abogada notario que celebró la escritura de divorcio para intentar demostrar irregularidades, si alguna, en el proceso de consumar el divorcio a través de escritura pública.
>
> 29. La demandante no anunció como testigo al Lcdo. Vilaró para intentar demostrar irregularidades, si alguna, en el proceso de asesoramiento a las partes para efectuar el divorcio por consentimiento mutuo a través de escritura pública.
>
> 30. La demandante no presentó testimonio pericial para intentar demostrar el alegado fraude sobre ocultación de bienes cometido por Justin.

Véase, apéndice del recurso, anejo 28, pág. 198.

Por tanto, de la prueba ofrecida, admitida y creída por el foro de instancia, consta que la apelante no demostró el alegado fraude ni la supuesta ocultación de los bienes gananciales. Por el contrario, se desprende que ambas partes "realizaron recíprocas concesiones de sus bienes, donde la [apelante] recibiría 240k y el [apelado] retendría los valores en criptomonedas". *Id.*, pág. 223. En relación con esto, el foro de instancia concluyó como sigue:

> [...] no hay duda alguna ante la conciencia de este Tribunal que la demandante recibió los 240k aludidos en cumplimiento con el Acuerdo, se liquidó la totalidad de los bienes gananciales y que la demandante sabía en todo momento el total de los bienes gananciales habidos al momento de firmar la escritura [...] Este fue el *quid pro quo* del Acuerdo. Es más, conforme nuestro estado de derecho no es necesario que las prestaciones recíprocas fuesen equivalentes o respondieran a valores objetivamente equiparables. *Mun. San Juan, supra.* Por lo tanto, como en todo contrato de transacción es necesario que las partes sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación sobre la cosa controvertida, aquí la demandante sacrificó los valores de criptomonedas y el demandado los 240k. Como vimos, la cosa controvertida fue el caudal ganancial el cual se transigió como parte de la escritura de divorcio por consentimiento mutuo. Nuevamente, la demandante transfirió el riesgo de los valores de criptomonedas a cambio de la certeza de recibir 240k. Por el contrario, el demandado asumió el riesgo de los valores de criptomonedas a cambio de transferir a la demandante 240k.

Véase, apéndice del recurso, anejo 28, pág. 223.

En consideración a todo lo anterior, determinamos que la apelante no colocó en posición al foro de instancia para determinar la existencia del alegado fraude cometido por el apelado ni, en alternativa, algún incumplimiento con el acuerdo estipulado por ambas partes. En consecuencia, concluimos que el foro de instancia no erró al desestimar la causa de acción por insuficiencia de la prueba.

En cuanto a la imposición de honorarios de abogados, determinamos que, a pesar de que el foro de instancia no otorgó credibilidad a la apelante, no hemos hallado en el expediente ni en la TPO que esta haya actuado temerariamente al instar su reclamación. Por tanto, concluimos que procede dejar sin efecto la imposición de honorarios de abogados.

### C. *Undécimo y duodécimo señalamiento de error*

En esencia, la apelante sostuvo que el foro de instancia erró al conceder los daños solicitados por el apelado en su reconvención. Le asiste la razón.

Como explicamos, en Puerto Rico la regla general es que no procede una causa de acción en daños y perjuicios como consecuencia de la presentación de un pleito civil. En esas

circunstancias, el remedio disponible para la parte demandada injustificadamente es la imposición de costas y honorarios de abogados dentro del mismo pleito. A modo excepcional, se reconoce una causa de acción en daños y perjuicios por persecución maliciosa cuando los hechos probados reflejan circunstancias extremas en las que se haya acosado al demandante con pleitos injustificados y maliciosos.

La jurisprudencia establece que para que prospere una reclamación por persecución maliciosa deben concurrir cuatro elementos: (1) que el demandado haya iniciado una acción civil o proceso criminal; (2) que lo haya hecho de forma maliciosa y sin causa probable; (3) que ese proceso haya concluido favorablemente para el demandante, y, (4) que, como consecuencia de ello, el demandante haya sufrido daños y perjuicios. La ausencia de cualquiera de estos requisitos impide la procedencia de la acción.

Nótese que, en el caso ante nuestra consideración, el apelado presentó una *Reconvención* en la que alegó que sufrió daños y perjuicios a raíz de la *Demanda* que instó la apelante en su contra, la cual calificó como temeraria y constitutiva de persecución maliciosa. Sin embargo, tal como ya discutimos, la *Reconvención* incoada por el apelado no procede automáticamente por la mera presentación de la *Demanda* de epígrafe. Para que dicha *Reconvención* prosperara, era necesario que el apelado demostrara que fue objeto de acoso judicial por medio de circunstancias extremas, injustificadas y maliciosas, ya que es quien tenía el peso de la prueba. Además, era necesario que el proceso judicial hubiera concluido. Del expediente, no surge que el apelado hubiera presentado prueba a esos efectos. Ante esas circunstancias, el remedio disponible para el apelado la imposición honorarios de abogados. Adviértase que eso fue precisamente lo que hizo el foro de instancia al desestimar la *Demanda* de epígrafe.

Además, al decretase la desestimación de la *Demanda* de epígrafe, el proceso judicial no culmina de manera automática, ya que la parte adversamente afectada conserva el derecho de revisar dicha determinación mediante un recurso de apelación, tal como ocurrió en este caso. Por tanto, la *Sentencia* apelada no adquirió el carácter de final y firme, razón por la cual la *Reconvención* resultaba prematura. Por consiguiente, tampoco se satisface uno de los elementos que exige una reclamación por persecución maliciosa. Nuestro Tribunal Supremo ha sido claro al resolver que "[s]i falta alguno de [estos requisitos], el resultado es fatal para el demandante". *Parés v. Ruiz*, supra.

En consecuencia, concluimos que el foro de instancia erró al conceder los daños solicitados en la *Reconvención* y procede su revocación.

**-IV-**

Por los fundamentos antes expuestos, se **modifica** la *Sentencia* apelada para dejar sin efecto la compensación de daños económicos, daños morales y angustias mentales, así como los honorarios de abogado por temeridad. Así modificada, se **confirma** el resto de la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones